UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80351-CV-HURLEY/HOPKINS

TANSEL YILMAZ,

    Plaintiff,

v.

MICHAEL MANN et al.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff Tansel Yilmaz's Motion for Summary Judgment [ECF No. 37]. Yilmaz moves for summary judgment against Defendant Michael Mann, a managing member of ConstantCreative.com, LLC. In his complaint, Yilmaz claims that ConstantCreative violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, by failing to pay him minimum wage and overtime compensation. Yilmaz seeks to hold Mann, as managing member, individually liable for ConstantCreative's violations. The issue before the Court is whether Yilmaz is a statutory employee of ConstantCreative, and therefore protected by the FLSA, or an independent contractor, and therefore not.

### I.  PROCEDURAL HISTORY

On April 12, 2013, Yilmaz filed an FLSA complaint against ConstantCreative.com, LLC and its managing members, Michael Mann and Tiffany Reynolds. In Counts I and II, Yilmaz claims that ConstantCreative failed to pay him minimum wage and overtime compensation in

violation of 29 U.S.C. §§ 206 and 207, respectively. Count III claims that Mann is individually liable for ConstantCreative's violations.

The defendants, together, filed an answer to Yilmaz's complaint. Soon after, however, defense counsel withdrew from representation. When ConstantCreative failed to obtain new counsel, the Court entered default judgment against it. Thereafter, Yilmaz voluntarily dismissed Reynolds. Yilmaz now moves for summary judgment on Count III of the complaint against Mann.

## II.   BACKGROUND

In October 2012, Yilmaz responded to an online job posting for the position of "President–ConstantCreative.com, LLC," an online marketing and graphic design firm. The posting advertised that the candidate would use his "own business and internet knowledge" to build ConstantCreative "from the ground up." It also advertised that the candidate would lead the company "based on best practices" from Michael Mann's online books at MakeMillions.com and BestPracticesGuide.com. The posting did not specify a salary amount, only that it would be "DOE" (dependent upon experience).

Yilmaz, an experienced web designer, applied for the job, and Mann accepted his application. According to Yilmaz, Yilmaz was to receive "50% of the revenue generated by" ConstantCreative as compensation. According to Mann, Yilmaz was to receive 50% "of all revenue *he generated* for the work *he performed* for" ConstantCreative. Yilmaz served as President of ConstantCreative from October 2012 to April 2013.

The first evidence of contact during the parties' working relationship is an e-mail thread beginning February 13, 2013. On that date, Yilmaz e-mailed Tiffany Reynolds, a managing

member of ConstantCreative, and told her that he had been working since October 2012 and had yet to receive compensation. Reynolds forwarded Yilmaz's email to Mann, who explained to Yilmaz that he needed to provide hourly invoices. After a discussion as to what those invoices should contain, Yilmaz eventually complied.

When Yilmaz performed work for clients, he issued them invoices payable to ConstantCreative. Yilmaz then issued invoices to ConstantCreative for his services, payable to Ocres Inc., a company that Yilmaz owned. The service listed on those invoices was:

> Independent Contractor: President
> ConstantCreative.com LLC.

Some of ConstantCreative's clients were businesses that Mann owned. Others were clients Yilmaz procured. The corporate address of ConstantCreative was Mann's Boca Raton, Florida apartment.

During Yilmaz's time as President, ConstantCreative received $10,636 in revenue deposits. On March 4, 2013, ConstantCreative paid Yilmaz $5,318, 50% of that amount. On March 11, 2013, ConstantCreative paid Yilmaz $374.80 to reimburse him for his expense in purchasing a dedicated computer server. On April 2, 2013, Yilmaz e-mailed Mann to tell him that he was "done."

### III.   LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all

reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir.1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine dispute that precludes summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada*, 148 F.Supp.2d 1316, 1320 (S.D.Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim, and the Court should grant the summary judgment. *Celotex*, 477 U.S. at 322–23. Conversely, if reasonable minds could find a genuine dispute of material fact, then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Board of Public Education.*, 495 F.3d 1306, 1315 (11th Cir.2007).

## IV.   DISCUSSION

### A.   THE FAIR LABOR STANDARDS ACT

The overtime compensation and minimum wage protections of the FLSA apply only to statutory "employees." 29 U.S.C. §§ 206(a); 207(a)(1). The FLSA defines an "employee" as "any individual employed by an employer." § 203(e)(1). To prove an FLSA violation, "[t]he elements that must be shown are simply a failure to pay overtime compensation and/or minimum

4

wages to *covered employees* . . . ." *Secretary of Labor v. Labbe*, 319 Fed. App'x 761, 763 (11th Cir. 2008) (emphasis added). "Independent contractors" are not "covered employees." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). An independent contractor differs from an employee as follows: an independent contractor is "in business for himself"; an employee is "dependent upon finding employment in the business of others." *Id.* at 1312 (internal quotation marks omitted).

### B. INDIVIDUAL LIABILITY

The requirement to pay minimum wage and overtime compensation applies only to statutory "employers." 29 U.S.C. §§ 206(a); 207(a)(1). The FLSA defines an "employer" as a person acting "in the interest of an employer in relation to an employee." § 203(d). A corporate officer may be liable as an "employer" if he is "involved in the day-to-day operation of the company or direct supervision of the employee at issue." *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013).

Yilmaz argues that by defaulting, ConstantCreative admits that Yilmaz was its employee. Therefore, to prove Mann's individual liability, Yilmaz need only show that Mann operated ConstantCreative or directly supervised Yilmaz. But, Yilmaz is incorrect to assert that ConstantCreative's default judgment has such an effect. By defaulting, ConstantCreative admitted Yilmaz's allegations only as against itself. The default judgment did not establish those allegations as against Mann, who has consistently contested Yilmaz's claims. Mann answered Yilmaz's complaint and has responded to Yilmaz's motion for summary judgment. The Court, therefore, cannot bind Mann by ConstantCreative's default. *See e.g., Faughnan v. Big Apple Car Service*, 828 F. Supp. 155 (E.D.N.Y. 1993) (holding that a default judgment against a taxi driver

did not apply to his vicariously liable employer when the employer answered and responded to the plaintiff's complaint).

Furthermore, neither does the Court's default judgment collaterally estop Mann from litigating the issue of ConstantCreative's liability. Even if ConstantCreative and Mann were identical parties, default judgment for failure to obtain counsel, unlike fraud, does not warrant the Court's diversion from the rule that "default judgment will not support the application of collateral estoppel." *See In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995) (collaterally estopping a defendant from relitigating an issue established by default judgment when the defendant "engaged in dilatory and deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a sanction against him"). Instead, the Court must first determine if Plaintiff was ConstantCreative's employee.

### C. INDEPENDENT CONTRACTOR OR EMPLOYEE

To distinguish independent contractors from employees, courts look to the "economic reality" of their working relationship. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013) (citing *Bartels v. Birmingham*, 332 U.S. 126, 1430 (1947)). The inquiry is whether the alleged employee has "economic dependence" on his or her alleged employer. *Id.* at 1312. To guide this inquiry, the Eleventh Circuit provides six factors:

(1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2) The alleged employee's opportunity for profit or loss depending on his managerial skill;
(3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4) Whether the service rendered requires a special skill;
(5) The degree of permanency and duration of the working relationship;
(6) The extent to which the service rendered is an integral part of the alleged employer's business

6

*Id.* (citing *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308 (5th Cir. 1976) and *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).  The parties' subjective beliefs and expectations, as well as the labels they place on their relationship, are immaterial.  *See id.* ("This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling the relationship . . . ."); *Chapman v. A.S.U.I. Healthcare and Development Center*, ___ Fed. App'x ___, 2014 WL 351868, at *1 (5th Cir. 2014) ("Neither a defendant's subjective belief about employment status nor the existence of a contract designating that status is dispositive.").

### 1. CONTROL

To determine if an individual is an independent contractor or an employee, the Court first considers "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed."  *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013).  An employer maintains such control if the worker cannot, without threat of termination or withholding of work, determine his own hours, modify his billing practices, work for other companies, or decline an assignment.  *See id.* at 1313–16.  A worker is more likely an employee if he must "routinely communicate[]" with his employer, and the employer supervises and monitors the worker's schedule.  *See id.* at 1314–15.  Under this factor, Yilmaz was more like an independent contractor.

Yilmaz determined his own hours, and Mann never supervised or monitored Yilmaz's compliance.  In fact, Mann had no knowledge of the hours Yilmaz worked until February 2013, when Yilmaz himself contacted Mann.  When Yilmaz did work, Yilmaz had broad discretion to bill as many hours, for whatever service, at whatever price, he chose.  The only specification

7

Mann provided was that Yilmaz would split the proceeds with ConstantCreative. Mann provided Yilmaz no billing codes, no set prices, and no mandatory hours.

Yilmaz declares that he "built [ConstantCreative] from the ground up according to Mann's directions and instructions." But, the evidence shows that Mann provided little more than guidance. In fact, when Yilmaz failed to act in accordance with Mann's wishes, Mann did not threaten him with termination, only remonstration: "you can do what you want but since you aren't listening to anything I say feel free to send a business plan when you figure out what you are doing." An employer would not provide his employee such a loose instruction. *Murray v. Playmaker Services, LLC*, 512 F. Supp. 2d 1273, 1278 (S.D. Fla. 2007) (finding that an individual was an independent contract when the relationship was described as "doing her own thing").

## 2. OPPORTUNITY FOR PROFIT OR LOSS

Second, the Court considers the "alleged employee's opportunity for profit or loss depending on his managerial skill." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). An independent contractor profits from his own managerial skill, an employee from the skill of others. Such managerial skill includes the control over price, *see id.* at 1317, and the choice of location, advertising, and services provided, *see Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1313 (5th Cir. 1976).

Here, Yilmaz profited from his own managerial skill, not that of others. Yilmaz has provided no evidence that ConstantCreative determined the prices Yilmaz charged, where Yilmaz conducted business, Yilmaz and ConstantCreative's advertising campaign, or the services Yilmaz could provide. Although ConstantCreative's address was Mann's apartment,

8

Yilmaz never "stepped foot" there, and Yilmaz never met its managing members. And, although Mann provided Yilmaz some of his clients, Yilmaz also developed his own. In sum, Yilmaz was in business for himself.

### 3. INVESTMENT IN EQUIPMENT OR MATERIALS

Third, the Court considers "the alleged employee's investment in equipment or materials required for his task, or his employment of workers." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). An independent contractor risks his own independent capital, while an employee has his expenses provided. *See Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1313–14 (5th Cir. 1976).

In this case, there is insufficient evidence for this factor weigh in favor of either side. On the one hand, an expense invoice and bank receipt shows that ConstantCreative reimbursed Yilmaz $374.80 for his purchase of a dedicated server, and Yilmaz declares that ConstantCreative reimbursed him for internet services, software fees, and contractor costs. If Mann provided some, although not all, of Yilmaz's "costly necessities," Yilmaz may be an employee. *See id.*

On the other hand, Yilmaz admits in his e-mail to Mann that "[I am] putting my own money to run constantcreative.com. i am paying my people for the work i do for constantcreative.com clients [sic]." Yilmaz also provides no evidence, such as an invoice or receipt, that Mann directly paid any expenses besides his dedicated server. Without more, the Court cannot determine for whom this factor predominates.

9

### 4. SPECIAL SKILL

Fourth, the Court considers "whether the service rendered requires a special skill." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). An independent contractor prepossesses a special skill, while an employee learns one on the job. *See id.* at 1318. This factor weighs toward independent contractor status. Yilmaz was experienced in internet design and marketing, and there is no evidence that ConstantCreative provided any training.

### 5. PERMANENCY AND DURATION

Fifth, the Court considers "the degree of permanency and duration of the working relationship." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). A working relationship is permanent and durable if it cannot be terminated without notice, is automatically renewable, lasts for a term of at least a year, is routinely reviewed, and is exclusive. *See id.* at 1318–19; *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976).

This factor weighs towards Yilmaz's status as an independent contractor. Both Yilmaz and ConstantCreative could terminate their relationship at any time. In fact, Yilmaz did. *See Murray v. Playmaker Services, LLC*, 512 F. Supp. 2d 1273, 1279 (S.D. Fla. 2007) (finding there was no permanency when the plaintiff could, and did, "stop the relationship when she pleased"). Yilmaz's working relationship was not automatically renewable and the term, if it existed, was for only six months. According to Yilmaz, he and Mann agreed that "after a six (6) month trial period [Yilmaz's] compensation would be based on salary, and that [his] employment would be . . . exclusive to [ConstantCreative]." As a result, Yilmaz was more like an independent contractor.

### 6. INTEGRAL PART OF ALLEGED EMPLOYER'S BUSINESS

Sixth, the Court considers "the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). This factor weighs towards Yilmaz's status as an employee. Although Mike Mann owned or provided many of ConstantCreative's clients, Yilmaz generated one hundred percent of ConstantCreative's revenue. Furthermore, Yilmaz performed all of ConstantCreative's client servicing. Although Mike Mann may have generated the clients, Yilmaz performed all the work. As a result, Yilmaz was more like an employee.

### D. THE BALANCE OF FACTORS

To succeed on his motion, Yilmaz must point to sufficient evidence to show that he is entitled to judgment as a matter of law. But, as of yet, Yilmaz has not made such a showing. Only one factor, the last, weighs towards Yilmaz's status as an employee. All the other factors weigh evenly or towards his status as an independent contractor. Although Yilmaz may have struggled financially, the record, as it is currently comprised, provides insufficient evidence that Yilmaz was economically dependent upon ConstantCreative as an employee. If Yilmaz cannot establish that he was an employee of ConstantCreative, then Mann cannot be liable for ConstantCreative's violations.

### CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to summary judgment.

Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that:

Plaintiff Tansel Yilmaz's Motion for Summary Judgment [ECF No. 37] is **DENIED**.

      **DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 17th day of March, 2014.

                                                        Daniel T. K. Hurley  
                                                         United States District Judge

*Copies provided to counsel of record*